LERON W. HUSBANDS        &ast;    IN THE
1205 Fiji Avenue
Hyattsville, Maryland 20785    &ast;    CIRCUIT COURT FOR

       Plaintiff        &ast;    PRINCE GEORGE'S COUNTY

    v.                     &ast;

FINANCIAL MANAGEMENT    &ast;
SOLUTIONS, LLC t/a
FMS FINANCIAL SOLUTIONS   &ast;    Case No.: CAL 20-11793
9001 Edmonston Road, Suite 20
Greenbelt, Maryland 20770    &ast;

Serve: The Corporation Trust Incorporated  &ast;
       2405 York Road, Suite 201
       Lutherville Timonium, MD 21093-2264  &ast;
       Resident Agent
                              &ast;

DREYFUSS MANAGEMENT LLC    &ast;
4800 Montgomery Lane, 10th Floor
Bethesda, Maryland 20814    &ast;

Serve: Finance Service Group LLC       &ast;
       4800 Montgomery Lane, 10th Floor
       Bethesda, Maryland 20814
       Resident Agent               &ast;

    and                           &ast;

JEFFREY N. HAUSFELD, M.D.    &ast;
1 Le Havre Court
Potomac, Maryland 20854    &ast;

       Defendants        &ast;

&ast;    &ast;    &ast;    &ast;    &ast;    &ast;    &ast;    &ast;    &ast;    &ast;    &ast;    &ast;

## COMPLAINT
## AND JURY DEMAND

     Plaintiff Leron W. Husbands, by and through his undersigned counsel, hereby

brings this action for damages and other relief against Defendants Financial Management

Solutions, LLC t/a FMS Financial Solutions, Dreyfuss Management LLC, and Jeffrey N. Hausfeld, M.D., and states as follows:

## PARTIES AND JURISDICTION

1.      Plaintiff Leron W. Husbands is an African-American adult resident of Prince George's County who currently resides at 1205 Fiji Avenue in Hyattsville, Maryland. Plaintiff is a current employee of Defendant Financial Management Solutions, LLC t/a FMS Financial Solutions and its parent company, Defendant Dreyfuss Management LLC (hereinafter, collectively, "FMS").

2.      Defendant Financial Management Solutions, LLC t/a FMS Financial Solutions[1] is a Maryland limited liability company and its principal office is located at 9001 Edmonston Road, Suite 20, in Greenbelt, Prince George's County, Maryland.  At all times pertinent, Plaintiff has worked for FMS at the office on Edmonston Road.

3.      Defendant Dreyfuss Management LLC is a Maryland limited liability company and the parent of Defendant Financial Management Solutions, LLC t/a FMS Financial Solutions.  Its principal office is located at 4800 Montgomery Lane, 10th Floor, in Bethesda, Montgomery County, Maryland.

4.      FMS operates out of the office on Edmonston Road in Prince George's County as a debt collection agency.

5.      Defendant Jeffrey N. Hausfeld, M.D. is an adult believed to currently reside at 1 Le Havre Court in Potomac, Montgomery County, Maryland.  He is the former

---

[1] "FMS Financial Solutions" is registered as a trade name with the Maryland Department of Assessments and Taxation by Financial Management Solutions, LLC.

Managing Director of FMS who served in that role during some of the events recounted below. *See, e.g., infra* ¶¶ 8-11 and Count I. His tenure with FMS came to an end in or about February of 2017. At all times pertinent during the period of his active employment, Defendant Hausfeld participated in and/or controlled the day-to-day operations of FMS and their employees, including Plaintiff.

6.      This Court may exercise personal jurisdiction over Defendants pursuant to Md. Code Ann., Courts & Jud. Proc. § 6-102 and/or § 6-103. Venue is appropriate under Md. Code Ann., Courts & Jud. Proc. § 6-201.

## STATEMENT OF FACTS[2]

7.      Plaintiff has been a dedicated and hard-working employee of FMS for nearly 12 years, and, at all times pertinent, his primary duty has been to engage in the collection of debts through telephonic communications with debtors.

8.      Through at least early 2017, Defendants instituted a policy and practice in which race was knowingly and intentionally used to assign FMS's debt-collecting workers to debtors. Specifically, African-American employees, like Plaintiff, would be assigned to collect the debts of African-American debtors, while white employees would be assigned to collect from white debtors.

---

[2] Below is a recitation of facts relevant to the particular causes of action currently being asserted in this Complaint. There are, however, substantial additional facts associated with Plaintiff's ongoing dispute with FMS which are not recited herein because the would-be causes of action associated with those facts are currently the subject of a Charge of Discrimination filed by Plaintiff with the Equal Employment Opportunity Commission (hereinafter "EEOC") and cross-filed with the Prince George's County Human Relations Commission. Plaintiff expects that these additional facts, and the additional causes of action associated therewith, will be presented to the Court once the EEOC's administrative process is complete.

9.      The policy, which was inherently discriminatory, first became known to Plaintiff in early January 2017.

10.     This astonishingly brazen practice, in which Defendants racially segregated their workforce, apparently came to an end shortly thereafter, but not before it cost Plaintiff, both emotionally as well as financially.

11.     Plaintiff was personally economically damaged, in part, due to the disparity between the average household incomes of African-American debtors versus their white counterparts. *See, e.g.,* CFED's Report on the Racial Wealth Divide in Baltimore (January 2017).[3] This dynamic of our society, which sadly still exists, had the effect of depressing the potential and actual wages earned by Plaintiff.

12.     Additionally, Plaintiff, and other workers on site at FMS's office on Edmonston Road, were continuously video and audio recorded by FMS. Plaintiff never consented to this invasion of his privacy and further expressly objected to being recorded in this fashion. Plaintiff, who first became aware of the audio recording in 2019, knows of at least one other worker who likewise objected. Rather astonishingly, the entirety of the office – every nook and cranny – was audio recorded.[4]

---

[3] This Report, which also provides details regarding the State of Maryland and the entire country, is available online at prosperitynow.org/files/resources/Racial_Wealth_Divide_in_Baltimore_RWDI.pdf.

[4] To Plaintiff's understanding, however, FMS chose not to record any of the statements made by the debtors during their phone calls with FMS's debt collectors. As such, FMS was only interested in what their own workers had to say throughout the workday, including any and every private comment unrelated to FMS's business operations, but paid no mind to recording the statements/admissions of the debtors themselves even though such statement/admissions, if recorded with the debtor's consent, would have served a clear business purpose and could have had value in subsequent litigation to collect the debt.

13.    Moreover, FMS recently conceded that its workers should have been paid on a 26 pay-per-year basis (every two weeks), rather than a 24 pay-per-year basis (twice per month).  In other words, rather than paying Plaintiff $33,600 per year ($1,400 × 24 = $33,600), FMS should have been paying him $36,400 per year ($1,400 × 26 = $36,400).  This has resulted in financial losses to Plaintiff for a number of years.

14.    Additionally, in the past, FMS would deduct money from its workers' paychecks when the worker did not reach their quota for a preceding month.[5]  Plaintiff never consented to such deductions, which cost him approximately $2,000 per year.

15.    There have also been other payroll issues that defy explanation.  For example, in Plaintiff's payroll check from FMS dated February 7, 2019, Plaintiff was wrongly docked eight hours of vacation pay for the Martin Luther King holiday.  Then, in his payroll check dated February 21, 2019, Plaintiff's vacation hours balance was reduced from 72.12 all the way down to 5.86 hours despite the fact that he had taken no vacation, and his personal leave hours went down from 16 to 1.86 without justification.  Thereafter, when Plaintiff actually went on vacation, his vacation pay balance was wrongly reduced by FMS to well below zero, where it remained for many months.  And in his May 30, 2019 payroll check, Plaintiff was docked 40 hours of sick pay, which was incorrect.

---

[5] FMS has now ceased making such deductions, but had engaged in this practice for some time.

5

## CAUSES OF ACTION

### COUNT I
### Race Discrimination in Violation of 42 U.S.C. § 1981, As Amended

16.     Plaintiff realleges and reasserts each and every allegation set forth in Paragraphs 1 through 15 above, as if each were set forth herein verbatim.

17.     Plaintiff is, and at all times pertinent has been, a member of a class of individuals who fall within the protections of 42 U.S.C. § 1981, as amended.

18.     Defendants knowingly and intentionally instituted a racial segregation policy and practice at their workplace whereby work was assigned to employees based specifically on their race. African-American workers, like Plaintiff, were assigned to collect from African-American debtors and white workers were assigned to collect from white debtors. *See supra* ¶¶ 8-11.

19.     Defendants' knowing and intentional actions in this regard were obviously and unquestionably based upon the race of their workers, including Plaintiff.

20.     The race of Plaintiff and these other workers was an unlawful and determinative factor in Defendants' decision to engage in this policy.

21.     Defendants' impermissible race-based actions were undertaken to interfere with Plaintiff in the exercise and/or enjoyment of his rights, benefits, and privileges under the law.

22.     Defendants' violations of 42 U.S.C. § 1981, as amended, were willful.

23.     Defendants' violations of 42 U.S.C. § 1981, as amended, were intentional.

24.     Defendant's violations of 42 U.S.C. § 1981, as amended, were malicious.

6

25.    As a direct and proximate result of Defendants' violations of Plaintiff's rights, Plaintiff has suffered, and will continue to suffer, both economic and non-economic harm, including, but not limited to, lost wages, loss of promotional opportunities, loss of other benefits of employment, loss of prestige, loss of status, inconvenience, insult, loss of enjoyment of life, mental anguish, and the attorney's fees and costs of this action.

WHEREFORE, Plaintiff prays that this Honorable Court or a jury determines that the practices by Defendants complained of herein were unlawful; that he be awarded judgment against all Defendants, jointly and severally, for all available forms of monetary damages (including, but not limited to, lost wages and benefits, compensatory damages, and punitive damages) in an amount in excess of $75,000[6] plus pre- and post-judgment interest, reasonable attorney's fees, expert witness fees, and costs; that an Order be entered by the Court compelling Defendants to cease and desist from engaging in such unlawful practices in the future; and for all other and further relief that this Court or a jury deems appropriate.

## COUNT II
### Violation of the Maryland Wiretapping and Electronic Surveillance Act, Md. Code Ann., Courts & Judicial Proceedings §§ 10-401 et seq.

26.    Plaintiff realleges and reasserts each and every allegation set forth in Paragraphs 1 through 15 above, as if each were set forth herein verbatim.

27.    Plaintiff is an individual whose communications were audio recorded by FMS. As such, he was, and remains, entitled to the protections of the Maryland

---

[6] *See* Md. R. 2-305.

Wiretapping and Electronic Surveillance Act (hereinafter "MW&ESA"), Md. Code Ann., Courts & Judicial Proceedings §§ 10-401 et seq.

28.    The MW&ESA allows for a person such as Plaintiff to pursue a private right of action for the violation of its provisions. *See id.* at § 10-410.

29.    FMS, which is obligated to comply with the MW&ESA, knowingly and willfully generated or facilitated the audio recording of Plaintiff, and their other workers, using an electronic, mechanical, or other device.

30.    These audio recordings of Plaintiff, and FMS's other workers, continued day after day, each and every business day of the year.

31.    The recording equipment captured Plaintiff's communications, and those of other workers, throughout the entirety of FMS's office.

32.    FMS audio recorded all of Plaintiff's verbal communications, whether they were business-related or personal. The recording continued, unabated, during breaks in Plaintiff's working hours and during his lunch break.[7] They continued when he made personal calls during these breaks to third-parties, including his wife and children. They continued when he discussed personal matters with friends and co-workers.

33.    Plaintiff did not consent to being audio recorded in this invasive fashion and even expressly objected to FMS recording him.

34.    FMS's unacceptable violation of Plaintiff's rights caused him discomfort, mental anguish, inconvenience, insult, embarrassment, and loss of enjoyment of life.

---

[7] FMS did not provide its workers with a separate break room. As such, workers like Plaintiff would need to take their breaks and eat their lunches at their desks.

35.    FMS's recording of Plaintiff, in clear violation of the MW&ESA, was malicious and committed with ill will and evil intent because FMS continued recording despite knowing that their workers objected and because it served no purpose other than to pry unnecessarily into said workers' lives. *See supra* ¶ 12 and footnote thereto.

WHEREFORE, Plaintiff prays that this Honorable Court or a jury determines that the practices by Defendants Financial Management Solutions, LLC t/a FMS Financial Solutions and Dreyfuss Management LLC complained of herein were unlawful; that he be awarded judgment against said Defendants, jointly and severally, for all available forms of monetary damages (including, but not limited to, actual damages, liquidated damages, and/or punitive damages) in an amount in excess of $75,000[8] plus pre- and post-judgment interest, reasonable attorney's fees, expert witness fees, and costs; that an Order be entered by the Court compelling said Defendants to cease and desist from engaging in such unlawful practices in the future; and for all other and further relief that this Court or a jury deems appropriate.

## COUNT III
### Violation of the Maryland Wage Payment & Collection Law, Md. Code Ann., Labor & Employment §§ 3-501 et seq.

36.    Plaintiff realleges and reasserts each and every allegation set forth in Paragraphs 1 through 15 above, as if each were set forth herein verbatim.

---

[8] *See* Md. R. 2-305.

9

37.    At all times pertinent, Plaintiff has been an "employee," and FMS has been his "employer" within the scope and meaning of the Maryland Wage Payment & Collection law (hereinafter "MWP&CL").

38.    Pursuant to §§ 3-501 et seq. of the MWP&CL, FMS, as Plaintiff's employer, was obligated to pay Plaintiff all "wages," as defined by the MWP&CL, that were due to him as a result of the parties' employment relationship.

39.    As detailed above, FMS failed and refused to compensate Plaintiff properly in a number of ways. *See supra* ¶¶ 13-15.

40.    Under the MWP&CL, FMS was required to provide all such wages owed to Plaintiff, "at least once in every 2 weeks or twice in each month." Md. Code Ann., Labor & Employ. § 3-502(a)(1)(ii).

41.    FMS's failure and refusal to timely and properly pay the wages owed to Plaintiff was willful and intentional, was not the result of any *bona fide* dispute between Plaintiff and FMS, and was not in good faith.

42.    Under such circumstances, Plaintiff is entitled to recover, in addition to his unpaid wages, two more times that amount in liquidated damages as well as reasonable attorney's fees and costs. *See id.* at § 3-507.2.

WHEREFORE, Plaintiff prays that he be awarded judgment against Defendants Financial Management Solutions, LLC t/a FMS Financial Solutions and Dreyfuss Management LLC, jointly and severally, for monetary damages in the amount of no less than $49,900, inclusive of his unpaid wages and liquidated damages, plus additional

10

amounts for pre- and post-judgment interest, reasonable attorney's fees, expert witness

fees, costs, and all other and further relief that this Court or a jury deems appropriate.

Respectfully submitted,

Neil R. Lebowitz
Lebowitz Law Firm
8180 Lark Brown Road, Suite 201
Elkridge, Maryland 21075
neil@lebowitzlegal.com
410-730-9010
Counsel for Plaintiff Leron W. Husbands

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Neil R. Lebowitz
Lebowitz Law Firm
8180 Lark Brown Road, Suite 201
Elkridge, Maryland 21075
neil@lebowitzlegal.com
410-730-9010
Counsel for Plaintiff Leron W. Husbands

PR GEO CO MD #44    2020 APR 21    PM 5: 41    CLERK OF THE CIRCUIT COURT