**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>**LERON W. HUSBANDS,**</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>**Plaintiff,**</td><td></td><td></td></tr>
<tr><td>**v.**</td><td>*</td><td>**Case No.: GJH-20-3618**</td></tr>
<tr><td></td><td></td><td></td></tr>
<tr><td>**FINANCIAL MANAGEMENT**</td><td>*</td><td></td></tr>
<tr><td>**SOLUTIONS, LLC,** *et al.,*</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>**Defendants.**</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
</table>

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM OPINION**

Plaintiff Leron Husbands brings this civil action against Defendants Financial Management Solutions, LLC ("FMS"), Dreyfuss Management Services, LLC ("DMS"), and Jeffrey N. Hausfeld, alleging various claims stemming from Plaintiff's employment at FMS, including race discrimination, failure to accommodate, and wage violations. ECF Nos. 2 & 11-1. Pending before the Court is Plaintiff's Motion for Leave to Amend. ECF No. 11.[1] No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the following reasons, Plaintiff's Motion for Leave to Amend is granted, in part, and denied, in part.

---

[1] Also pending before the Court is Defendant Hausfeld's Motion Requesting Status and Request for Scheduling Order, ECF No. 19, which is denied as moot in light of this Memorandum Opinion and accompanying Order.

I.      BACKGROUND[2]

A.  Factual Background

The following facts remain unchanged from the original Complaint. *Compare.* ECF No. 11-1 *with* ECF No. 1. Plaintiff Leron W. Husbands, who is African-American, has worked at Defendant Financial Management Solutions, LLC ("FMS") for more than 12 years. ECF No. 11-1 ¶¶ 1–2, 7.[3] At all times relevant to this action, Plaintiff's primary duty was "to engage in the collection of debt through telephonic communications with debtors." *Id.* ¶ 7. According to Plaintiff, Defendant FMS and Defendant Dreyfuss Management Services, LLC ("DMS"), FMS's parent company, instituted a policy and practice in which FMS's debt-collecting workers received their assignments based on race—"African-American employees, like Plaintiff, would be assigned to collect the debts of African-American debtors, while white employees would be assigned to collect from white debtors." *Id.* ¶ 8. Plaintiff learned of the practice in early January 2017 and it "apparently came to an end shortly thereafter." *Id.* ¶¶ 9–10. However, while the policy was in effect, the policy damaged Plaintiff financially due to disparity between the average household incomes of African-American and white debtors. *Id.* ¶ 11.

Plaintiff further alleges that he and other workers on site at FMS's office were continuously video and audio recorded without their consent. *Id.* ¶ 12. According to Plaintiff's understanding, FMS only recorded statements made by its own employees—not those made by debtors during phone calls with them. *Id.* ¶ 12 n.5. Plaintiff alleges that he and another employee objected to the recording. *Id.* ¶ 12.

---

[2] Unless stated otherwise, all facts are taken from Plaintiffs' proposed Amended Complaint or documents attached to and relied upon in the Amended Complaint and are accepted as true. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

[3] According to the Amended Complaint, Plaintiff began working at FMS in May 2008. ECF No. 11-1 ¶ 20.

2

Finally, in the original Complaint and in the Amended Complaint, Plaintiff raises several pay issues with respect to FMS. First, Plaintiff alleges that FMS paid its employees twice per month rather than every two weeks. *Id.* ¶ 13. Second, FMS deducted money from its employees' paychecks when the employees did not reach their quota for a preceding month, although it has since discontinued that practice. *Id.* ¶ 14 & n.6. Third, FMS wrongly deducted Plaintiff's pay during holidays and vacations and improperly reduced his personal leave and sick pay hours. *Id.* ¶ 15.

In the Amended Complaint, Plaintiff adds allegations concerning Defendants' responses to his requests for accommodations for his respiratory disability and a disability associated with his back. *Id.* ¶ 21. Plaintiff alleges that in March 2019 and again in April 2019, he "communicated with FMS regarding his need for a reasonable accommodation in relation to musty, old carpeting, which was causing Plaintiff respiratory and allergy problems." *Id.* ¶ 23. However, on May 6, 2019, FMS denied Plaintiff's request, stating in a letter that the facility's air quality was "'below ambient,' that Plaintiff could ask for 'other reasonable accommodations,' and that, otherwise, they 'consider this matter closed and hope you can put it behind you.'" *Id.* ¶ 24. FMS never provided Plaintiff with an effective accommodation, "such as the removal of the carpeting or teleworking." *Id.* ¶ 25. Plaintiff is confident these would have been effective because removal of carpets at his home had remedied his ailments, and he only suffered from respiratory difficulties at work. *Id.* According to Plaintiff, FMS was "antagonistic towards the concept of Plaintiff teleworking" despite Plaintiff's duties being particularly well-suited for remote work. *Id.* ¶ 26.

Plaintiff next alleges that FMS retaliated against him for seeking this accommodation in early April 2019 "by issuing him a notice of disciplinary action (written warning) . . . in which

FMS formally alleged that he was insubordinate and in violation of company policy in relation to his cell phone usage." *Id.* ¶ 27. According to Plaintiff, other employees were not disciplined in writing for their alleged cell phone use. *Id.*

In addition to Plaintiff's respiratory problems, Plaintiff had a damaged disc in his back and ultimately had to have surgery in mid-July 2019. *Id.* ¶ 29. Due to the "severe and debilitating" pain, Plaintiff took medical leave "on an intermittent basis" starting in or about mid-May 2019. *Id.* ¶¶ 28–29. At some point, although the Amended Complaint does not clearly state when, he took leave "for a continuous multi-week period." *Id.* ¶ 28. Plaintiff returned to work full-time on or about September 3, 2019. *Id.* ¶ 31. According to Plaintiff, throughout the period he was on intermittent and continuous leave, he was "harassed and interfered with"—for example, his pay and paid leave were improperly docked, he was not provided a downward adjustment for his monthly collection goal, and his need for leave was continually challenged and questioned. *Id.* ¶¶ 32–35.

### B. Procedural History

On February 11, 2020, Plaintiff filed an EEOC Charge of Discrimination against FMS, which was cross-filed with the Prince George's County Human Relations Commission, containing the allegations added in the Amended Complaint. *Id.* ¶ 36. Plaintiff also checked the boxes on the Charge form for discrimination based upon disability and sex, and for retaliation. *Id.*

On April 21, 2020, Plaintiff filed suit in the Circuit Court for Prince George's County against FMS, DMS, and Jeffrey Hausfeld. ECF No. 2. The Complaint alleged race discrimination in violation of 42 U.S.C. § 1981 (Count I), violation of the Maryland Wiretapping and Electronic Surveillance Act, Md. Code Ann., Courts & Judicial Proceedings §§ 10-401 *et seq.* (Count II),

and violations of the Maryland Wage Payment & Collection Law, Md. Code. Ann., Labor & Employment §§ 3-501 *et seq.* (Count III). *See id.* FMS filed an Answer to the Complaint on November 19, 2020, ECF No. 3, and Mr. Hausfeld filed an Answer that was served on October 22, 2020, ECF No. 4. DMS, however, removed the action to this Court on December 15, 2020, ECF No. 1, and filed an Answer on December 22, 2020, ECF No. 7.

On December 28, 2020, after having received a Notice of Right to Sue in October 2020, *see* ECF No. 11-1 ¶ 38, Plaintiff filed a Motion for Leave to Amend Complaint, ECF No. 11. The Amended Complaint added 15 claims alleging: failure to accommodate under the Maryland Fair Employment Practice Act, Md. Code, § 20–606 of the State Government Article ("MFEPA"), Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*, as amended ("ADA"), Prince George's County Code §§ 2-185 *et seq.*, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 701, *et seq.* (Counts IV–VII); disability discrimination under those same four statutes (Counts VIII–XI); retaliation under those same four statutes (Counts XII–XV); violations of the Family and Medical Leave Act for both interference and retaliation (Counts XVI & XVII); and violation of the Maryland Wage Payment & Collection Law (Count XVIII). *Id.*

While the Amended Complaint was filed just six days after Defendant DMS filed its responsive pleading, and Plaintiff may thus amend as of right against Defendant DMS, leave is required to amend the Complaint as to Defendants FMS and Hausfeld. *See* Fed. R. Civ. P. 15(a).[4]

---

[4] There is a split of authority regarding the application of Rule 15(a)(1) to multi-defendant cases. *See Columbia Cas. Co. v. McCabe Trotter & Beverly, PC*, No. 2:20-CV-3680-DCN, 2021 WL 2337188, at *2 (D.S.C. June 8, 2021) (identifying split and listing cases); *compare Villery v. D.C.*, 277 F.R.D. 218, 219 (D.D.C. 2011) ("In cases involving multiple defendants, a plaintiff may file an amended complaint as of right concerning only those defendants who, at the time the plaintiff files his amendment, have not yet filed an answer or a Rule 12(b), (e), or (f) motion, as well as those defendants who, at the time the plaintiff files his amendment, have filed an answer or a Rule 12(b), (e), or (f) motion, but who have made that filing exactly or fewer than 21 days before the plaintiff files his amendment.") *with Rubenstein v. Keshet Inter Vivos*, No. 17-61019-CIV, 2017 WL 7792570, at *3 (S.D. Fla. Oct. 18, 2017) (holding that an amended complaint filed as a matter of right is ineffective as to all defendants if it is filed more than 21 days after the first responsive pleading or defensive motion is filed). The Court follows the more "common approach," which treats the 21-day time frame as applying to each defendant independently. *Seeberger v.*

Defendants FMS and DMS opposed Plaintiff's Motion on January 11, 2021, ECF No. 14, and

Plaintiff replied on January 29, 2021, ECF No. 17. On June 11, 2021, Defendant Hausfeld filed a

Motion Requesting Status and Request for Scheduling Order, ECF No. 19, which Defendants

FMS and DMS opposed, ECF No. 20.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave"

to parties to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). "This liberal

rule gives effect to the federal policy in favor of resolving cases on their merits instead of

disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). The

Fourth Circuit has "interpreted Rule 15(a) to provide that 'leave to amend a pleading should be

denied only when the amendment would be prejudicial to the opposing party, there has been bad

faith on the part of the moving party, or the amendment would have been futile.'" *Id.* (quoting

*Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)); *see also Mayfield v. Nat'l*

*Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 379 (4th Cir. 2012). "Futility is apparent if

the proposed amended complaint fails to state a claim under the applicable rules and

accompanying standards," and would therefore not survive a motion to dismiss pursuant to Rule

12(b)(6). *Davison v. Randall*, 912 F.3d 666, 690 (4th Cir. 2019) (quoting *Katyle v. Penn Nat'l*

*Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011)).

To overcome a Rule 12(b)(6) motion, a complaint must allege sufficient facts to state a

plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when "the plaintiff pleads factual

---

*Goodman*, No. 2:14-CV-1063-GBW-WPL, 2015 WL 13662654, at *1 (D.N.M. Apr. 3, 2015). However, Defendant DMS may, of course, move to dismiss the claims found to be futile here.

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In evaluating the sufficiency of the plaintiff's claims, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in original) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)). However, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement[.]" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

## III.   DISCUSSION

### A.  Failure to Accommodate

In the Amended Complaint, Plaintiff raises failure to accommodate claims under the MFEPA, ADA, Prince George's County Code, and Rehabilitation Act. Defendants raise two challenges to these claims: (1) Plaintiff has not alleged he was disabled and (2) Plaintiff has not alleged he was a qualified individual. ECF No. 14 at 5.[5] As a preliminary matter, although Plaintiff alleges that he has two disabilities—respiratory problems and a damaged disc in his back—Plaintiff does not indicate anywhere in the Amended Complaint that he was denied accommodations related to his back. Indeed, in the Reply in support of Plaintiff's Motion for Leave, Plaintiff states, "With respect to Plaintiff's back disability, not only is it clear that he required the reasonable accommodation of medical leave, such leave was <u>actually taken by him</u>." ECF No. 17 at 14 (emphasis in original). Accordingly, the Court proceeds to analyze only the alleged failure to accommodate Plaintiff's respiratory difficulties.

---

[5] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

In a failure-to-accommodate case brought under the ADA, a plaintiff establishes a *prima facie* case by demonstrating "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position; and (4) that the [employer] refused to make such accommodations." *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001) (quoting *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999)). The same standards used to determine whether an employer violated the ADA apply to Rehabilitation Act claims, *see* 29 U.S.C. § 794(d); *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995), the MFEPA, *see Courtney-Pope v. Bd. of Educ. of Carroll Cty.*, 304 F. Supp. 3d 480, 487 (D. Md. 2018) (listing same four factors), and the County Code, *cf. Wilson v. Montgomery Cty. Bd. of Trustees*, No. 17-cv-2784-PWG, 2018 WL 4300498, at *4 (D. Md. Sept. 10, 2018) (considering disability discrimination claims brought under the Montgomery County Code and the ADA together).

A disability under the ADA is either "a physical or mental impairment that substantially limits one or more major life activities" (the "actual disability" prong), "a record of such an impairment" (the "record" prong), or "being regarded as having such an impairment" (the "regarded as" prong). 42 U.S.C. § 12102(1); 29 C.F.R. § 1630.2(g)(1)(iii). "The term 'substantially limits' shall be construed broadly in favor of expansive coverage" and is "not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i).[6] That said, "the scope of

---

[6] "Regardless of whether suit is filed under the Rehabilitation Act or under the Americans with Disabilities Act ('ADA'), the substantive standards for determining whether an individual is disabled are the same." *Sanchez v. Vilsack*, 695 F.3d 1174, 1182 n.2 (10th Cir. 2012); *see also Griffin v. Holder*, 972 F. Supp. 2d 827, 834 n.1 (D.S.C. 2013). Likewise, "the language in the Prince George's County Code defines a physical handicap as an impairment which 'substantial[ly] limits one or more...major life activities', Prince George Cty Code § 2-186(d)(14.1), and, thus, tracks the language in the ADA defining a disability as 'a physical or mental impairment that substantially limits one or more major life activities of such individual.' 42 U.S.C. § 12102(1)(A)." *Schmidt v. Town of Cheverly, MD.*, 212 F. Supp. 3d 573, 580 (D. Md. 2016).

'disability' under the ADA . . . is not without limit." *Eubanks v. Mercy Med. Ctr., Inc.*, No. 15-cv-513-WDQ, 2015 WL 9255326, at \*5 (D. Md. Dec. 17, 2015). Where the complaint contains "no facts showing that the impairment substantially limited a major life activity," courts in this Circuit have found the allegations insufficient. *Id.*

Plaintiff alleges that the "musty, old carpeting" at FMS's facility caused "Plaintiff respiratory and allergy problems." ECF No. 11-1 ¶ 23. However, Plaintiff does not specify the extent of these problems or indicate whether or how they impact Plaintiff's major life activities in the Amended Complaint. Accordingly, "[t]he court has no further information on the severity or type of plaintiff's medical limitations" and "cannot infer whether the activity limited by plaintiff's impairment is a major life activity or whether plaintiff's impairment substantially limits a major life activity." *Gray v. Walmart Stores, Inc.*, No. 7:10-CV-171-BR, 2011 WL 1831780, at \*10 (E.D.N.C. May 12, 2011); *see also Quarles v. Maryland Dep't of Hum. Res.*, No. 13-cv-3553-MJG, 2014 WL 6941336, at \*4 (D. Md. Dec. 5, 2014) (finding the second amended complaint did not contain factual allegations to support a plausible claim that the plaintiff was disabled where it did not allege the type of diabetes from which the plaintiff suffered, the degree to which diabetes limited her movement, how it otherwise affected her life,

---

The standard under MFEPA is slightly different—it lacks the "major life activity" requirement and defines disability as "any degree of paralysis, amputation, or lack of physical coordination; blindness or visual impairment; deafness or hearing impairment; muteness or speech impediment; [ ] physical reliance on a service animal, wheelchair, or other remedial appliance or device; and retardation and any other mental impairment or deficiency that may have necessitated remedial or special education and related services." Md. Code Ann., State Gov't § 20-601(b)(2). However, because "Maryland FEPA is the state law analogue to the federal discrimination statutes, . . . Maryland courts 'traditionally seek guidance from federal cases in interpreting Maryland's [FEPA].'" *Eubanks v. Mercy Med. Ctr., Inc.*, No. 15-cv-513-WDQ, 2015 WL 9255326, at \*7 (D. Md. Dec. 17, 2015) (quoting *Haas v. Lockheed Martin Corp.*, 914 A.2d 735, 742 (Md. 2007)). Moreover, the Code of Maryland Regulations § 14.03.02.02 defines "disability" as "[a] physical or mental impairment . . . which substantially limits one or more of an individual's major life activities." COMAR § 14.03.02.02(B)(6); *see also Peninsula Reg'l Med. Ctr. v. Adkins*, 448 Md. 197, 218, 137 A.3d 211, 223 (2016) (noting similarities between ADA and COMAR § 14.03.02.02(B)).

or that it substantially limited, rather than merely limited, her ability to walk). Plaintiff has thus failed to allege that he was disabled.

In Plaintiff's Reply in Support of the Motion for Leave, Plaintiff urges the Court to infer that this disability affected his ability to breathe, a major life activity, and that the respiratory disability was permanent. ECF No. 17 at 12 –13. However, a plaintiff cannot amend a complaint through briefing, *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013), and even the briefing does not contain facts giving rise to an inference that Plaintiff's respiratory difficulties substantially affect his major life activities. Additionally, that Defendants may be on notice of facts supporting Plaintiff's claim due to correspondence between the parties and the parties' involvement in the underlying EEOC proceedings does not absolve Plaintiff of his obligation to allege sufficient facts to support his claim in the complaint itself. *Cf.* ECF No. 17 at 6.

Additionally, aside from failing to adequately allege that Plaintiff was disabled, Plaintiff further fails to allege how the requested accommodations would have enabled him to perform the essential functions of the job, 29 C.F.R. § 1630.2(o)(1)(ii), or to "enjoy equal benefits and privileges of employment," 29 C.F.R. § 1630.2(o)(1)(iii). *See Melada v. Giant of Maryland, LLC*, No. 20-cv-1509-GJH, 2021 WL 3037454, at *5 (D. Md. July 19, 2021); *see also Wilson v. Montgomery Cty. Bd. of Trustees*, No. 17-cv-2784-PWG, 2018 WL 4300498, at *4 (D. Md. Sept. 10, 2018) (dismissing claim where the plaintiff adequately alleged that she had a disability but did not allege facts from which it was "possible to infer how these claimed disabilities prevented her from performing the essential functions of her job at her assigned desk location, or how the accommodation would enable her to perform those functions any better than at her assigned desk"). Plaintiff alleges simply that removing the carpets in his own home had "remedied his

10

ailments," ECF No. 11-1 ¶ 25, but does not allege a connection between the "ailments" and his work. Given the defects in Plaintiff's failure-to-accommodate claims, the attempts to amend the complaint to add these claims are futile and Counts IV–VII are dismissed without prejudice.[7]

### B. Disability Discrimination

In Counts VIII through XI, Plaintiff raises disability discrimination claims under the MFEPA, ADA, Prince George's County Code, and Rehabilitation Act. Defendants assert the same two defects raised above require dismissal of Plaintiff's disability discrimination claims: (1) failure to allege disability and (2) failure to allege Plaintiff was a qualified individual. *See* ECF No. 14 at 5, 10. Defendants further raise a third issue: the failure to allege discriminatory intent.

"To establish a claim for disability discrimination under the ADA, a plaintiff must prove '(1) that she has a disability, (2) that she is a 'qualified individual' for the employment in question, and (3) that [her employer] discharged her (or took other adverse employment action) because of her disability.'" *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 572 (4th Cir. 2015) (quoting *EEOC v. Stowe–Pharr Mills, Inc.*, 216 F.3d 373, 377 (4th Cir. 2000)).[8] "Disability discrimination may be proven through direct and indirect evidence or through the *McDonnell Douglas* burden-shifting framework." *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

---

[7] To the extent that Plaintiff believes these defects may be corrected, Plaintiff may move for leave to amend within 14 days. Failure to do so will result in dismissal of these counts with prejudice.

[8] The same analysis applies to Plaintiff's discrimination claims brought under the Rehabilitation Act, MFEPA, and the County Code. *See Wilson v. Montgomery Cty. Bd. of Trustees*, No. 17-cv-2784-PWG, 2018 WL 4300498, at *4 (D. Md. Sept. 10, 2018); *O'Reilly v. Bd. of Child Care of United Methodist Church, Inc.*, No. 20-cv-0570-JKB, 2020 WL 5913242, at *4 (D. Md. Oct. 6, 2020).

Although the Court has already determined that Plaintiff failed to allege that he had a disability related to his respiratory and allergy issues, Plaintiff has adequately alleged a disability with respect to his back. Specifically, Plaintiff alleges that he had a "damaged disc in his back for which he required surgery"; that "[t]he pain caused by this disabling condition was severe and debilitating, and the disability substantially limited various activities, including lifting, bending, sitting, standing, and sleeping"; and that "Plaintiff required the care of multiple healthcare professionals for many months on account of the disabling condition of his back and the treatment therefor." ECF No. 11-1 ¶¶ 28–30. As stated above, a disability is "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1). The ADA further identifies several "major life activities," including "sleeping, walking, standing, lifting, [and] bending." *Id.* § 12102(2)(A). Additionally, since the ADA Amendments Act of 2008, "disability" can include temporary impairments. *Acosta v. Ingerman & Horwitz, L.L.C.*, No. 14-cv-1605-WDQ, 2015 WL 795108, at *3 (D. Md. Feb. 24, 2015) (citing 29 C.F.R. § 1630.2(j)(1)(ix)). Here, where Plaintiff has alleged that the damaged disc in his back substantially limited several major life activities and was sufficiently severe to require surgery and months of treatment, he has sufficiently alleged that he was disabled.

Plaintiff next must allege that he is a "qualified individual"—that he could perform the essential functions of the position either with or without reasonable accommodations. Plaintiff alleges that "at all times pertinent, his primary duty has been to engage in the collection of debts through telephonic communications with debtors." ECF No. 11-1 ¶ 7. This description of the essential functions of his work, though cursory, is sufficient. *Cf. Rubino v. New Acton Mobile Indus., LLC*, 44 F. Supp. 3d 616, 623 (D. Md. 2014) (finding allegations insufficient where the complaint did not contain "even a cursory description of what kind of work the Plaintiff does").

Additionally, Plaintiff alleges that he took medical leave to receive treatment and surgery for his back and returned on or about September 3, 2019, to resume his position. *Id.* ¶ 31.[9] Although Plaintiff's allegations are "meager,"[10] Plaintiff has at least plausibly alleged that he is able to perform his job with the reasonable accommodation of temporary leave, and thus that he is a qualified individual.

Finally, Plaintiff must allege that he was discriminated against because of his disability. Plaintiff alleges that "[t]he acts and omissions of FMS while Plaintiff was in a disabled condition, namely, failing and refusing to provide an effective accommodation in relation to his respiratory disability and harassing and unjustly generating economic and non-economic difficulties for Plaintiff in relation to the medical leave associated with the disability in his back . . . constitute disability discrimination in violation of the law." ECF No. 11-1 ¶ 137. Plaintiff has not alleged facts showing that the denials of his requests for removal of the carpets or remote work were related to the back disability, as it appears that the denials occurred prior to Plaintiff taking leave for his back disability. *See id.* ¶¶ 23–24, 28. However, because Plaintiff has alleged that FMS improperly cut his pay during his leave, refused to implement a downward adjustment to Plaintiff's monthly collection goal upon his return, and refused to allow him a period of time to pay back the deficit when he returned, while able-bodied workers who took non-medical leave were not subject to this conduct, *id.* ¶¶ 33–34, Plaintiff has sufficiently alleged the third element of a discrimination claim, *see Mehan v. United Parcel Serv.*, No. 18-cv-1788-RDB, 2019 WL 1370096, at *8 (D. Md. Mar. 26, 2019) (finding allegations sufficient

---

[9] Leave may be a form of reasonable accommodation. *See* 42 U.S.C. § 12111(9)(B); 29 C.F.R. § app. 1630.2(o) (allowing for "the use of accrued paid leave or providing additional unpaid leave for necessary treatment"); COMAR §§ 14.03.02.04.A.(5), 14.03.02.05.B.(4), 14.03.02.05.B.(7); U.S. EEOC, "Employer-Provided Leave and the Americans with Disabilities Act."

[10] *Blackburn v. Trustees of Guilford Tech. Cmty. Coll.*, 733 F. Supp. 2d 659, 663 (M.D.N.C. 2010).

where the plaintiff alleged similarly-situated co-workers were treated more favorably); *see also*

*Mack v. Great Dane Trailers*, 308 F.3d 776, 782 (7th Cir. 2002). Accordingly, Plaintiff's Motion

for Leave to add disability discrimination claims related to his back is granted.

### C. Retaliation

Defendants next challenge Plaintiff's retaliation claims—likewise brought under the

MFEPA, ADA, County Code, and Rehabilitation Act—on the basis that Plaintiff has failed to

allege an adverse act. ECF No. 14 at 12–16. Indeed, in order to state a claim for retaliation, "a

plaintiff must show that: (1) [ ]he engaged in a protected activity; (2) [his] employer acted

adversely against [him]; and (3) [his] protected activity was causally connected to [his]

employer's adverse action." *Rhoads v. F.D.I.C.*, 257 F.3d 373, 392 (4th Cir. 2001). As to the

second element, "an employer's conduct must be so materially adverse as to dissuade a

reasonable employee from engaging in protected activities." *Michael v. Va. Commonwealth

Univ.*, No. 3:18-cv-125-JAG, 2019 WL 128236, at *3 (E.D. Va. Jan. 8, 2019); *see also

Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006) ("[A] plaintiff must show that

a reasonable employee would have found the challenged action materially adverse, which in this

context means it well might have dissuaded a reasonable worker from making or supporting a

charge of discrimination.").

Plaintiff alleges four allegedly adverse acts: (1) the refusal to provide reasonable

accommodations;[11] (2) the issuance of a disciplinary write-up for cell phone use; (3) docking his

pay and paid leave for weeks he worked during a period of "intermittent leave"; and (4) causing

---

[11] Although Plaintiff states in his Reply in support of the Motion for Leave that the first act includes "repeatedly refusing to provide or interfering with the reasonable accommodations (and FMLA leave)," ECF No. 17 at 16, the alleged interference is merely the financial losses included in the third and fourth categories, so the Court does not include that interference in the first category as well.

Plaintiff financial losses that able-bodied workers who took non-medical leave were not required to incur. ECF No. 11-1 ¶¶ 24, 27, 32–34; *see also* ECF No. 17 at 16 (grouping into categories).

First, though the denial of a request for accommodation may form the basis for a retaliation claim, such a denial does not by itself support a claim of retaliation. *See Johnson v. Maryland Transit Administration*, No. 19-cv-2523-CCB, 2021 WL 809768, at *5 (D. Md. Mar. 2, 2021); *see also Blair v. SUNY Univ. at Buffalo*, No. 17-CV-1317S, 2020 WL 695870, at *8 (W.D.N.Y. Feb. 11, 2020) (same); *Sosa v. New York City Dep't of Educ.*, 368 F. Supp. 3d 489, 496 (E.D.N.Y. 2019) ("While courts may consider the underlying conduct of an alleged failure to accommodate, a failure to accommodate, by itself, is not sufficient for purposes of establishing an adverse employment action." (internal quotations and citations omitted)).[12] Otherwise, "every time an employee was denied a requested accommodation, he would be able to 'double dip' by asserting both the ADA failure-to-accommodate and ADA retaliation claims." *Johnson*, 2021 WL 809768, at *5 (quoting *McClain v. Tenax Corp.*, 304 F. Supp. 3d 1195, 1206–07 (S.D. Ala. 2018)). Second, the disciplinary write-up is likewise not an adverse action unless it leads to other harm to Plaintiff's employment, such as termination or demotion, which Plaintiff does not allege here. *See Jeffers v. Thompson*, 264 F. Supp. 2d 314, 330 (D. Md. 2003); *Wright v. Kent Cty. Dep't of Soc. Servs.*, No. 12-cv-3593-ELH, 2014 WL 301026, at *14 (D. Md. Jan. 24, 2014); *Martin v. Sunlight Fin., LLC*, No. 3:20-CV-725-MOC-WCM, 2021 WL 3009018, at *2 (W.D.N.C. July 15, 2021). Plaintiff's latter two allegations, however, involving negative impacts on his compensation, support his retaliation claims, as decreases in pay or benefits amount to

---

[12] *But cf. Bluey v. Charles Cty., Md.*, No. 19-cv-3163-DKC, 2020 WL 5203334 at *9 (D. Md. Sept. 1 2020) (relying on repeated denials of reasonable accommodations, among other acts, as actionable adverse actions); *Thomson v. Ross*, No. 19-cv-1582- SAG, 2020 WL 3433324 at *4 (D. Md. June 23, 2020) (same).

adverse actions. *See Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999). Accordingly, Plaintiff's

Motion for Leave to add retaliation claims related to these actions is granted.

### D.  Rehabilitation Act

To the extent that Plaintiffs' disability discrimination, failure to accommodate, and

retaliation claims survive, Defendants argue that those brought under the Rehabilitation Act

should be dismissed, as Plaintiff has not alleged that the federal funding that Defendants received

renders it subject to the Rehabilitation Act. Specifically, while Plaintiff alleges that "At all times

pertinent, FMS was the recipient of federal financial assistance," ECF No. 11-1 at 116,

Defendants assert that "the only federal funds received by Defendants were the PPP loans

disbursed pursuant to the Coronavirus Aid, Relief, and Economic Security Act (CARES Act)" in

2020, after the acts alleged in the Amended Complaint, ECF No. 14 at 17. However, the Court

finds the allegations sufficient at this stage. *Cf. United States v. City of Charlotte, N.C.*, 904 F.

Supp. 482, 487 (W.D.N.C. 1995) (finding, where the plaintiff had alleged that "'[u]pon

information and belief, the defendant is a program or activity receiving federal financial

assistance, as defined by § 504 of the Rehabilitation Act of 1974, 29 U.S.C. § 794[,]'" plaintiff

had sufficiently stated a claim, and, "[o]f course, after discovery is completed, [the defendant

was] free to file a motion for summary judgment" if the evidence did not support the plaintiff's

Rehabilitation Act claim).

### E.  FMLA Claims

Plaintiff brings both interference and retaliation claims under the FMLA. Defendants first

argue the FMLA does not apply to them, as they have too few employees to be covered by it.

ECF No. 14 at 18. Specifically, Defendants assert that (1) Plaintiff's claim that Defendants have

50 employees "merely parrot[s] the statutory language" and is insufficient; and (2) to the

contrary, Defendant FMS had 31 or fewer employees "during the current or preceding calendar years" and Defendant DMS has had five or fewer employees during that time. *Id.* at 18–19. However, the Court finds Plaintiff's allegation is sufficient. *See Bryant v. Motorsports of Durham, LLC*, No. 1:20CV1101, 2021 WL 2662200, at *9 (M.D.N.C. June 29, 2021) (finding allegation "that Defendant 'ha[d] more than 50 employees employed at Plaintiff's work location' in the relevant period" sufficient); *Whitt v. High Voltage, Inc.*, No. CV 3:17-2532, 2017 WL 5707544, at *2 (S.D. W. Va. Nov. 27, 2017) (finding sufficient an allegation that "'Defendant is and was a covered employer under the FMLA, and employs 50 or more people within 75 miles of the location where Plaintiff was employed'"). Additionally, as stated above, at this stage, the Court resolves all factual disputes in Plaintiff's favor. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

### 1. Interference

"The FMLA provides covered employees with two types of rights and protections": 12 weeks of leave during any 12-month period and the right to be restored to an equivalent position upon return. *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 546 (4th Cir. 2006). "Claims of alleged violations of these prescriptive rights—known as 'interference' or 'entitlement' claims—arise under 29 U.S.C.A. § 2615(a)(1), which states that '[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.'" *Id.* "To make out an 'interference' claim under the FMLA, an employee must thus demonstrate that (1) he is entitled to an FMLA benefit; (2) his employer interfered with the provision of that benefit; and (3) that interference caused harm." *Adams v. Anne Arundel Cty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015). Interference with an employee's FMLA leave can include "refusing to authorize FMLA leave, discouraging

an employee from taking FMLA leave, and manipulating the work force to avoid responsibilities under the FMLA." *Battle v. City of Alexandria*, 2015 WL 1650246, at *4 (E.D. Va. Apr. 14, 2015) (referencing 29 C.F.R. § 825.220(b)).[13] A plaintiff must also show prejudice as a result of the violation of his FMLA rights. *Anderson v. Discovery Commc'ns, LLC*, 517 F. App'x 190, 198 (4th Cir. 2013).

Here, it is undisputed that Plaintiff took FMLA leave. *See* ECF No. 11-1 ¶ 28. Nevertheless, Plaintiff alleges that Defendants' efforts to dissuade him from taking leave, although unsuccessful, amount to interference. In other words, Plaintiff essentially alleges *attempted* denial of benefits rather than denial of benefits. The D.C. Circuit found such allegations actionable in *Gordon v. U.S. Capitol Police*, 778 F.3d 158 (D.C. Cir. 2015). In that case, the plaintiff's leave request was ultimately granted, but only after (1) her superior, who was "'mad' about FMLA requests generally," "vowed to 'find a problem' with hers" and required her to submit to an extra evaluation that she alleges will be "detrimental to her prospects for pay increases, promotions and transfers," and (2) her manager "became irate" about her request and initially refused it. *Id.* at 160. The D.C. Circuit considered "whether *ineffective* employer discouragement . . . could give rise to an interference claim" and held, relying in part on courts' treatment of the analogous National Labor Relations Act, "that an employer action with a

---

[13] Although some courts in this District have also found that "us[ing] the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions," *see, e.g.*, *Smith v. Caesars Baltimore Mgmt. Co., L.L.C.*, No. 17-cv-3014-ELH, 2019 WL 3766529, at *11 (D. Md. Aug. 9, 2019), constitutes interference with an employee's FMLA rights, this Court is persuaded that 29 C.F.R. § 825.220(c), the source of the quoted language, applies to retaliation claims, not interference claims. *See Downs v. Winchester Med. Ctr.*, 21 F. Supp. 3d 615, 618 (W.D. Va. 2014) ("While the Fourth Circuit has not expressed itself in terms as explicit as the Third, it is nevertheless clear that it views the taking of FMLA leave as a negative factor in employment actions . . . as set forth in § 825.220(c) as FMLA retaliation, not interference."); *see also Fortune v. Gaylor Elec., Inc.*, No. 1:19 CV 346, 2020 WL 6038295, at *5 (W.D.N.C. May 28, 2020), *report and recommendation adopted*, No. 1:19-CV-00346-MR-WCM, 2020 WL 3638132 (W.D.N.C. July 6, 2020) (discussing split and following *Downs*); *Mellen v. Trs. of Boston Univ.*, 504 F.3d 21, 26 (1st Cir. 2007) ("We have distinguished the FMLA's prescriptive provisions, which set forth substantive entitlements and for which an employer's subjective intent is irrelevant, from its proscriptive ones, for which the employer's motivation is central, and we have noted that negative factor claims should be characterized as proscriptive." (citations omitted)).

reasonable tendency to 'interfere with, restrain, or deny' the 'exercise of or attempt to exercise' an FMLA right may give rise to a valid interference claim under § 2615(a)(1) even where the action fails to actually prevent such exercise or attempt." *Id.* at 164-65 (emphasis in original).

However, several months later, the Fourth Circuit articulated a different standard. In *Adams v. Anne Arundel Cty. Pub. Sch.*, the Fourth Circuit considered an FMLA interference claim brought by a plaintiff that was not denied leave—in fact, "he took three separate medical leaves totaling well over twelve weeks"—but alleged that the defendant took adverse employment actions against him, which amounted to interference with his FMLA rights. 789 F.3d 422, 427 (4th Cir. 2015). Although the Fourth Circuit did not view the fact that the plaintiff's leave request was approved as dispositive of whether he had asserted an FMLA interference claim, it still found he had failed to state a claim because he could not show that he had actually been discouraged from taking leave. *Id.* at 428–29 (finding that the plaintiff "cannot demonstrate that these verbal and written reprimands in fact discouraged him from taking FMLA leave" as he started his second leave period on the same day as the first "verbal attack" and did not return to work for two months after the written reprimand was issued). In other words, while "[t]he fact that [the defendant] approved [the plaintiff's] FMLA leave does not automatically foreclose his interference claim," *Vannoy v. Fed. Rsrv. Bank of Richmond*, 827 F.3d 296, 303 n.5 (4th Cir. 2016), the plaintiff still must show that the attempts to discourage him from taking advantage of his FMLA benefits were successful.[14]

---

[14] This conclusion is consistent with case law emphasizing the difference between FMLA interference claims, which are concerned only with the actual fact of a denial of a benefit, and retaliation claims, which consider the defendant's intent. *See Bosse v. Balt. Cnty.*, 692 F. Supp. 2d 574, 588 (D. Md. 2010) ("A retaliation claim under the FMLA differs from an interference claim under the FMLA in that the interference claim merely requires proof that the employer denied the employee his entitlements under the FMLA, while the retaliation claim requires proof of retaliatory intent.").

Here, Plaintiff alleges that Defendants improperly reduced Plaintiff's pay and paid leave and "challenged and questioned Plaintiff's taking of intermittent leave." ECF No. 11-1 ¶ 33. But Plaintiff has not alleged that he would have acted differently with respect to his FMLA leave in the absence of that conduct. Accordingly, Plaintiff has not alleged discouragement amounting to FMLA interference, and his motion for leave to add this claim will be denied. Defendants' adverse acts in response to Plaintiff's FMLA leave will, however, be relevant to Plaintiff's retaliation claim. *See Downs v. Winchester Med. Ctr.*, 21 F. Supp. 3d 615, 618 (W.D. Va. 2014) (finding that where the plaintiff had alleged that "she was subjected to harassment, negative reviews, discipline and, ultimately, termination because she used FMLA leave" but was not denied that leave, the allegations were "properly viewed as a stating claim of FMLA retaliation alone").

### 2.  Retaliation

In addition to the FMLA's prescriptive rights, the Act "also contains *proscriptive* provisions that protect employees from discrimination or retaliation for exercising their substantive rights under the FMLA." *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 546 (4th Cir. 2006)(emphasis in original). Accordingly, plaintiffs may bring retaliation claims by alleging that they engaged in protected activity—such as taking FMLA leave—and that, as a result, the employer took adverse action against them. *Id.* at 551 (citing *Cline v. Wal–Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998)).

Defendants argue that Plaintiff has failed to allege that Defendants took adverse action against him. ECF No. 14 at 20–21. Courts apply the same "materially adverse" standard to FMLA retaliation claims as they do in the context of Title VII and ADA claims. *See Carrico v. Prince George's Cty. Gov't*, No. 17-cv-0822-TDC, 2020 WL 1434102, at *3 (D. Md. Mar. 24,

2020); *Morris v. Bardon, Inc.*, No. 18-cv-2973-GJH, 2020 WL 1322992, at *12 (D. Md. Mar. 20, 2020). As the Court has already determined that the decreases in Plaintiff's pay and benefits constitute adverse actions for the purposes of Plaintiff's disability-related retaliation claim, *see supra*, Section III.C, and Plaintiff relies on the same conduct as support for this claim, *see* ECF No. 11-1 ¶ 245; ECF No. 17 at 21, Plaintiff has also adequately alleged that Defendants' took adverse actions against him for the purposes of his FMLA retaliation claim. Accordingly, Plaintiff's motion for leave to add an FMLA retaliation claim is granted.

### F. MWPCL

Finally, in Count XVIII, Plaintiff brings a claim related to Defendants' failure to provide advance notice of his reduction of pay. Although Plaintiff brings a claim under § 3-504 of the MWPCL, the MWPCL does not provide employees with a private right of action under that section. Section 3-705.2 states, "if an employer fails to pay an employee in accordance with § 3-502 or § 3-505 of this subtitle, . . . the employee may bring an action against the employer to recover the unpaid wages." Md. Code, Labor & Employment § 3-507.2. Section 3-502 requires employers to set regular pay periods, and § 3-505 requires employers to pay employees all wages due at or before the employee's termination. Additionally, the Maryland Court of Appeals recently determined that § 3-705.2 also provides a private right of action for violations of section 3-503, which prohibits unauthorized deductions, as "[a] violation of § 3-503 necessarily constitutes a violation also of § 3-502 or § 3-505." *Marshall v. Safeway Inc.*, 437 Md. 542, 560, 88 A.3d 735, 745 (2014). The Court of Appeals emphasized that the MWPCL is intended to allow a private right of action to recover unpaid wages that are lawfully due; thus, the failure to regularly pay an employee, to pay due wages upon termination, or to pay an employee in full are all violations for which there is a private right of action under the law. *See id.*; *see also Mould v.*

*NJG Food Serv. Inc.*, No. 13-cv-1305-JKB, 2014 WL 2768635, at *3 (D. Md. June 17, 2014)

(noting that, while prior to the *Marshall* ruling, the court understood the MWPCL to grant

employees a private right to contest the timing of their paychecks, but not the amount of their

paychecks, "the Court of Appeals made clear in *Marshall* [that] the MWPCL grants employees a

private right of action where an employer fails to pay wages lawfully due").

Section 3-504, the provision at issue here, states:

(a) An employer shall give to each employee:
    (1) at the time of hiring, notice of:
        (i) the rate of pay of the employee;
        (ii) the regular paydays that the employer sets; and
        (iii) leave benefits;
    (2) for each pay period, a statement of the gross earnings of the employee and
    deductions from those gross earnings; and
    (3) at least 1 pay period in advance, notice of any change in a payday or wage.

Md. Code, Labor & Employment § 3-504(a). This provision is concerned with notice, not

payment, of wages. Indeed, the failure to provide a statement of an employee's gross earnings

would not constitute a failure to pay wages lawfully due, such that the violation would fall within

the scope of *Marshall*. While the third prong of § 3-504(a) presents a closer question—it could

plausibly be read to prohibit decreases in pay without adequate notice, such that an employee

would continue to be lawfully due the higher wages until one pay period after receiving notice of

the change—the Court will not read the third prong in isolation from the other two. Additionally,

as to the Court's knowledge, no Maryland court has found there to be a cause of action for

violations of § 3-504 in the wake of *Marshall*, and this Court is not inclined to create one.

Accordingly, the Court finds that § 3-504 does not involve the failure to pay wages lawfully due,

and therefore § 3-705.2 does not create a private cause of action for failures to give notice in

violation of § 3-504. The Motion for Leave is thus denied as to Plaintiff's MWPCL claim.

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Leave to Amend, ECF No. 11, is granted, in part, and denied, in part.[15] Specifically, Plaintiff's motion is granted with respect to the disability discrimination (Counts VIII–XI), retaliation claims (Counts XII–XV), and FMLA retaliation claim (Count XVII); denied with respect to the FMLA interference claim (Count XVI) and the MWPCL claim (Count XVIII); and denied without prejudice as to the failure to accommodate claims (Counts IV–VII). A separate Order follows.

Date: <u>September 23, 2021</u>                                        ___/s/_____
                                                                                         GEORGE J. HAZEL
                                                                                         United States District Judge

---

[15] Because Plaintiff's Amended Complaint is deemed filed on the date the Motion for Leave to Amend was filed, Plaintiff's request for a *nunc pro tunc* order is denied as moot.